BROWNING, J.
 

 Gerald David Odom (Appellant) appeals an order revoking his probation based on findings that he willfully, substantially violated three general conditions of probation. Concluding that the record does not demonstrate violations of Conditions (1) and (2), we reverse the revocation order and remand for the trial court to strike these findings and to determine whether the violation of Condition (8) alone justifies the revocation of probation and imposition of the same sentence.
 

 Procedural Histoi'y
 

 In Circuit Court Case No. 2004-CF-5240, Appellant was charged with burglary of an unoccupied dwelling, dealing in stolen property, and petit theft. In Circuit Court Case No. 2005-CF-0382, he was charged with driving while his driver’s license was revoked as a habitual offender. He pled no contest to petit theft and the lesser-included offenses of trespass and grand theft ($300.00 or more) in the 2004 case and to the charged offense in the 2005 case. On April 29, 2005, the trial court accepted the plea and sentenced Appellant, in the 2004 case, to 12 months’ probation on two counts and to 36 months’ probation for grand theft, all of which were to run concurrently. In the 2005 case, Appellant was sentenced to 12 months’ probation, to
 
 *675
 
 be served concurrently with the other case. In accordance with the terms and conditions set forth in section 948.06, Florida Statutes (2005), the following are among Appellant’s 22 general conditions of probation:
 

 (1) Each month you will make a full and truthful report to your Probation Officer on the form provided for that purpose.
 

 (2) You will pay to the State of Florida the amount of
 
 $50.00
 
 per month toward the cost of your supervision, unless otherwise waived in compliance with Florida Statutes.
 

 (8) You will promptly and truthfully answer all inquiries directed to you by the Court or the Probation Officer, and allow the Officer to visit in your home, at your employment site or elsewhere, and you will comply with all instructions he may give you.
 

 On August 24, 2007, an affidavit was filed alleging violations of General Conditions (1), (2), (8), and Special Condition (17). After a hearing, where Appellant was represented by counsel, the trial court orally announced that Appellant willfully, substantially had violated General Conditions (1), (2), and that part of (8) requiring him to report to probation every month between the first and fifth day of the month. The court revoked Appellant’s probation and sentenced him to concurrent terms of 30 months’ incarceration for the two felonies and to time served for the misdemeanors. The court decided not to base the revocation on Appellant’s failure to satisfy his community-service requirements in a timely manner, for Appellant actually completed his service belatedly. Appellant filed a timely notice of appeal.
 

 Subsequently, Appellant filed a Florida Rule of Criminal Procedure 3.800(b)(2) motion to correct purported sentencing errors, in which he specifically challenged the trial court’s three grounds for revoking his probation. The court entered an order granting the motion as to a fourth (jurisdictional) claim and directing that the judgment and sentence be corrected to reflect that the violation of probation and sentence applied only to Count Two (grand theft) of the 2004 case; the order set aside the sentence as to the 2005 case. A corrected judgment and sentence was issued. The trial court denied the remaining three claims, concluding that they were not appropriately before the court and citing
 
 Jackson v. State,
 
 983 So.2d 562 (Fla.2008).
 

 Standard of Review
 

 An order revoking probation is reviewed for an abuse of discretion.
 
 State v. Carter,
 
 835 So.2d 259, 262 (Fla.2002) (noting that the appellate court determines “whether or not the trial court acted in an arbitrary, fanciful or unreasonable manner in determining that [appellant’s] violation was both willful and substantial”). To trigger revocation of probation, a violation must be willful and substantial.
 
 Burgin v. State,
 
 623 So.2d 575, 576 (Fla. 1st DCA 1993). Reasonable efforts to comply with a condition of probation cannot be deemed a willful violation.
 
 Van Wagner v. State,
 
 677 So.2d 314, 317 (Fla. 1st DCA 1996). In a revocation proceeding, the State must prove its case by a preponderance of the evidence.
 
 Hopewell v. State,
 
 680 So.2d 600 (Fla. 2d DCA 1996). In very rare circumstances, a trial judge exceeds the broad limits of discretion and commits fundamental error,
 
 ie.,
 
 error that “reaeh[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error,” in which instances no contemporaneous objection is required.
 
 Reed v. State,
 
 837 So.2d 366, 370 (Fla.2002) (quoting
 
 Brown v. State,
 
 124 So.2d 481, 484 (Fla.1960)).
 

 
 *676
 

 Preservation of Errors Alleged on Direct Appeal
 

 Three potential avenues exist for this Court to consider the merits of the issues raised by Appellant on dii’ect appeal. First, “most trial court errors are subject to the contemporaneous objection rule.”
 
 Jackson,
 
 983 So.2d at 567-68. As the court explained in
 
 Castor v. State,
 
 365 So.2d 701, 703 (Fla.1978):
 

 The requirement of a contemporaneous objection is based on practical necessity and basic fairness in the operation of a judicial system. It places the trial judge on notice that error may have been committed, and provides him an opportunity to correct it at an early stage of the proceedings. Delay and an unnecessary use of the appellate process result from a failure to cure early that which must be cured eventually. To meet the objectives of any contemporaneous objection rule, an objection must be sufficiently specific both to apprise the trial judge of the putative error and to preserve the issue for intelligent review on appeal.
 

 In a similar vein, the Supreme Court of Florida stated later:
 

 The requirement of contemporaneous objection thus not only affords trial judges the opportunity to address and possibly redress a claimed error, it also prevents counsel from allowing errors in the proceedings to go unchallenged and later using the error to a client’s tactical advantage.
 

 F.B. v. State,
 
 852 So.2d 226, 229 (Fla.2003). “Errors that have not been preserved by contemporaneous objection can be considered on direct appeal only if the error is fundamental.”
 
 Jackson,
 
 983 So.2d at 568. Like the record in
 
 Jackson,
 
 the instant record unequivocally demonstrates that Appellant’s counsel did not make a contemporaneous, specific objection
 
 during the revocation hearing
 
 to any of the trial court’s rulings challenged in this appeal.
 

 Appellant notes that “a defendant has several different options available to raise sentencing errors.”
 
 Id.
 
 Therefore, a second option exists if any of the three issues on appeal constitute a “sentencing error” as contemplated by rule 3.800(b)(2). If so, then pursuant to
 
 Jackson,
 
 the absence of a timely objection at the revocation hearing required Appellant to preserve the issue by filing a post-sentence motion under rule 3.800(b)(2), which he did.
 
 Jackson,
 
 983 So.2d at 567-68;
 
 Boyd v. State,
 
 912 So.2d 1293 (Fla. 2d DCA 2005) (concluding that appellant preserved issue challenging the evidentiary basis for imposition of $450 in court costs and $128 in investigative costs by filing a rule 3.800(b)(2) motion);
 
 Jones v. State, 898
 
 So.2d 209 (Fla. 2d DCA 2005) (concluding that filing a rule 3.800(b)(2) motion preserved the issue of the trial court’s failure to specify the particular conditions that were grounds for probation revocation).
 

 The third option arises where the error is not a “sentencing error” and no contemporaneous, specific objection was made. In such instances, no rule 3.800(b) motion is necessary to preserve the error, but the district court of appeal will apply the stringent “fundamental error” rule.
 
 Jackson,
 
 983 So.2d at 567. Although Appellant contends that his three claims constitute sentencing errors of the type contemplated in
 
 Jackson
 
 and cognizable in a rule 3.800(b)(2) motion, the State correctly responds that these claims are not, in fact, sentencing errors. Rather, Appellant’s claims relate to the guilt phase of the revocation proceedings, not to the ultimate sanctions imposed.
 
 Jackson,
 
 983 So.2d at 572-73 (stating that sentencing errors under rule 3.800(b) “all involve errors related to the ultimate sanctions imposed”). Appellant misplaces his reliance on materially
 
 *677
 
 different facts in opinions like
 
 Lee v. State,
 
 826 So.2d 457 (Fla. 1st DCA 2002), in which we concluded that the lack of conformity between the trial court’s oral pronouncement and the subsequent written probation revocation order was an issued preserved in the rule 3.800(b)(2) motion.
 
 Cf. Jones v. State,
 
 876 So.2d 642 (Fla. 1st DCA 2004) (affirming judgment and sentence following probation revocation, where issue of trial court’s revoking probation for appellant’s violating conditions neither orally pronounced nor embodied in written order was not preserved by a contemporaneous objection or a rule 3.800(b) motion to correct the error),
 

 Under the circumstances in
 
 Lee,
 
 defense counsel could not have known at the time of the revocation hearing about any discrepancies between the oral pronouncements and any future written revocation order. In contrast, all of Appellant’s claims involve either the issue of adequate notice of the conditions or the sufficiency of the evidence to justify revocation. The trial court made oral findings at the conclusion of the revocation hearing; therefore, defense counsel could have raised the three claims then in a timely, specific objection. “[R]ule 3.800(b) is intended to permit defendants to bring to the trial court’s attention errors in sentence-related
 
 orders,
 
 not any error in the sentencing process.”
 
 Jackson,
 
 983 So.2d at 572. The
 
 Jackson
 
 court made clear the limited permissible use of this avenue for relief:
 

 The rule was never intended to allow a defendant (or defense counsel) to sit silent in the face of a procedural error in the sentencing process and then, if unhappy with the result, file a motion under rule 3.800(b).
 

 Jackson,
 
 983 So.2d at 573. Neither was the rule intended to bypass the “contemporaneous objection” requirement or to substitute for a collateral claim of ineffective assistance of counsel.
 
 Id.
 
 Because his three claims do not involve sentencing errors and were not preserved for appellate review, Appellant’s sole remaining option on direct appeal is to show fundamental error.
 

 Condition (1)
 

 The first issue is whether the trial court erred by revoking probation based on a violation of Condition (1), which required Appellant “[e]ach month ... [to] make a full and truthful report to your Probation Officer on the form provided for that purpose.” “[P]robationers are entitled to notice ‘of what law the probationer is alleged to have violated.’ ”
 
 Andrews v. State,
 
 693 So.2d 1138, 1141 (Fla. 1st DCA 1997) (quoting
 
 Burton v. State,
 
 651 So.2d 793, 794 (Fla. 1st DCA 1995)). “[T]he language used in a condition of probation is determinative of a probationer’s duties and responsibilities while on probation.”
 
 Stanley v. State,
 
 922 So.2d 411, 414 (Fla. 5th DCA 2006). By its plain words, this condition relates only to the requirement to turn in to the probation officer each month a full, truthful form. In contrast, the affidavit of violation of probation alleged 1) not only Appellant’s failure to make a full, truthful report to the probation officer on the form provided, 2) but also
 
 his failure to comply with the probation officer’s instructions to report to the probation office sometime on the first through fifth day of each month.
 

 This second, italicized allegation is not mentioned or required under Condition (1). “[T]he violation must mirror the language of the condition of probation allegedly violated.”
 
 Stanley,
 
 922 So.2d at 415. The written transcript of the invocation hearing confirms Appellant’s assertion that no competent, substantial evidence was adduced indicating
 
 *678
 
 that Appellant had failed to make a full, truthful monthly report on the form provided. In fact, the subject of a form to be submitted to the probation officer was not even addressed at the hearing. Thus, the State failed to show a willful, substantial violation of Condition (1).
 
 Stanley,
 
 922 So.2d at 415 (stating that “[v]iolation of probation cases adhere to strict due process requirements attendant to criminal cases,” that “[a] probationer must be violated for the reasons stated in the affidavit filed,” and “the violation must mirror the language of the condition of probation allegedly violated”).
 

 “[A] conviction for an offense that did not take place constitutes fundamental reversible error.”
 
 Hobson v. State,
 
 908 So.2d 1162, 1164 (Fla. 1st DCA 2005);
 
 see F.B.,
 
 852 So.2d at 230-31;
 
 Santiago v. State,
 
 847 So.2d 1060, 1062 (Fla. 2d DCA 2003);
 
 Griffin v. State,
 
 705 So.2d 572, 574 (Fla. 4th DCA 1998) (finding fundamental error where appellant was convicted of a crime that did not take place);
 
 Harris v. State,
 
 647 So.2d 206, 208 (Fla. 1st DCA 1994). Likewise, “[i]t is fundamental error to convict a person of an uncharged offense.”
 
 Bennett v. State,
 
 823 So.2d 849, 852 (Fla. 1st DCA 2002). “The revocation of a defendant's probation based on a violation not alleged in the charging document is a deprivation of the right to due process” constituting fundamental error.
 
 Richardson v. State,
 
 694 So.2d 147, 147 (Fla. 1st DCA 1997);
 
 see Smith v. State,
 
 738 So.2d 433, 435 (Fla. 1st DCA 1999);
 
 Dulaney v. State,
 
 735 So.2d 505 (Fla. 1st DCA 1999). By analogy, revoking probation based partly on a purported violation that was not proved or admitted constitutes fundamental error. Additionally, it is reversible error to revoke probation on Condition (1) based on a purported violation by non-performance — Appellant’s failure to comply with the probation supervisor’s instruction to report to the office sometime on the first through fifth day of the month — where the supposed instruction is neither mentioned nor required in the unambiguous language of Condition (1). Accordingly, the trial court’s finding of a willful, substantial violation of Condition (1) must be stricken from the revocation order.
 
 Smith v. State,
 
 711 So.2d 100, 102 (Fla. 1st DCA 1998).
 

 Condition (2)
 

 It is undisputed that Appellant failed to pay the full costs of his supervision before his probation was revoked. Once non-payment is shown, the probationer has the burden under section 948.06(5), Florida Statutes (2005), to prove, by clear and convincing evidence, his or her inability to pay.
 
 Martin v. State,
 
 937 So.2d 714, 716 (Fla. 1st DCA 2006). Appellant testified that he had tried to make as many payments toward the costs of supervision as his financial circumstances would allow.
 

 It is undisputed that the trial court made no finding as to Appellant’s ability to pay before probation was revoked. “[BJefore a person on probation can be imprisoned for failing to make restitution, there must be a determination that that person has, or has had, the ability to pay but has willfully refused to do so.”
 
 Stephens v. State,
 
 630 So.2d 1090, 1091 (Fla.1994);
 
 see Bryant v. State,
 
 546 So.2d 762 (Fla. 5th DCA 1989). The same principle applies to the requirement to pay the costs of probationary supervision. Section 948.06(5) does not relieve the trial court of its duty to determine that the violation was willful by proving the probationer’s ability to pay.
 
 Martin,
 
 937 So.2d at 716;
 
 Blackwelder v. State,
 
 902 So.2d 905, 907 n. 1 (Fla. 2d DCA 2005). Because ability to pay is an essential element for a finding that a probationer willfully violated
 
 *679
 
 probation for failure to pay supervisory costs, the revocation of Appellant’s probation based on the alleged violation of Condition (2) constitutes fundamental error.
 
 Hobson,
 
 908 So.2d at 1164. In
 
 Friddle v. State,
 
 989 So.2d 1254, 1255 (Fla. 1st DCA 2008), we held that revoking the defendant’s probation based on his failure to pay restitution, without a specific finding that he had the ability to pay, compelled reversal. For the same reason, the finding that Appellant willfully violated Condition (2) must be stricken from the probation revocation order.
 

 Condition (8)
 

 Condition (8) required Appellant to do the following: 1) promptly, truthfully answer all inquiries directed to him by the trial court or the probation officer; 2) allow the probation officer to visit Appellant’s home, employment site, and elsewhere; and 3) comply with “all instructions” given by the probation officer. The question of whether the State presented sufficient evidence to prove a violation of Condition (8) is the type of issue appropriately covered by the “contemporaneous objection” requirement, for it involves a matter that readily could have been brought to the trial court’s attention at the revocation hearing, thereby affording the court an opportunity to consider the challenge.
 
 See F.B.,
 
 852 So.2d at 229-30. Nevertheless, this issue was not preserved by a timely, specific objection. This claim does not involve a “sentencing error” cognizable in a rule 3.800(b) claim under
 
 Jackson.
 
 Therefore, we can review this issue only under the stringent standard of fundamental error.
 
 Jackson,
 
 983 So.2d at 566.
 

 On April 29, 2005, Appellant was placed on 36 months’ probation for grand theft. The trial court accepted the testimony of the probation supervisor, Officer Trevino Snowden, that Appellant’s file was transferred to her on November 28, 2005. On December 7, 2005, Appellant reported to the probation office, where an Officer No-land instructed him on the conditions of probationary supervision. Officer Snow-den first met with Appellant on January 6, 2006, when they discussed Appellant’s reporting requirements. He was looking for employment then. Officer Snowden specifically instructed Appellant to report sometime on the first two business days of each month or, stated slightly differently by the DOC, sometime during the first five days of each month. Officer Snowden’s case notes disclosed that Appellant continued to report beyond the first five days of each month, prompting her repeatedly to remind Appellant of the requirement to report at the beginning of each month, as he had been instructed to do. Despite Officer Snowden’s reminders, Appellant reported late on April 7, 2006; July 10, 2006; September 8, 2006; October 13, 2006; November 16, 2006; December 18, 2006; January 8, 2007; and February 26, 2007. When he reported late in the month, Appellant sometimes met with another probation officer. On February 19, 2007, Officer Snowden contacted Appellant’s employer, who stated that the company was short on employees and that the workers were required to work long hours. The employer and Officer Snowden scheduled a February 23 appointment for Appellant, but Appellant did not report until February 26, 2007. On March 21, 2007, when Officer Snowden tried to have personal contact with Appellant at his residence, she was told that Appellant was at work. The supervising officer left a card instructing Appellant to contact her as soon as possible. On March 26, 2007, Officer Snowden spoke to Appellant on the telephone and instructed him to schedule an appointment with her as soon as possi
 
 *680
 
 ble. Appellant needed to report on March 29, 2007, between 8:30-9:00 A.M., and he did report on that date. However, Appellant reported late again on April 30, 2007; May 29, 2007; June 18, 2007; July 20, 2007; and August 17, 2007. For at least 13 months, Officer Snowden did not violate Appellant, despite his late reporting, because she wanted to give Appellant a reasonable chance to comply with the rules. However, it is departmental policy to require all offenders to comply with their conditions of probation no later than 90 days before the termination of supervision.
 

 On the afternoon of August 14, 2007, Officer Snowden spoke to Appellant and inquired about his numerous reporting lapses. Appellant told her that he could not report any sooner than the next Monday due to his employment. Officer Snow-den informed Appellant that she would be contacting the trial court. The affidavit of violation of probation was signed on August 16, 2007, and filed on August 21. Officer Snowden had informed Appellant’s employer(s) that Appellant was on probation. The officer never had any communication from Appellant’s employer(s) indicating that Appellant could not report to the probation officer if he was working on that date. Officer Snowden testified that she had instructed Appellant that if he contacted her beforehand, they could reschedule his reporting to the office at a mutually convenient time and date if Appellant’s work or personal matters kept him from adhering to the original schedule. Appellant was employed for most of his period of probation. The trial court accepted the testimony that Officer Snow-den and Appellant had no agreement allowing Appellant to report late each month.
 

 Appellant, age 29, testified that his trade is remodeling and painting houses. He had about three different jobs during his 36 months’ probation and tried to work as often as possible. Currently, he was living with his mother. He had no car and was unable to drive due to the revocation of his driver’s license for habitual traffic offenses; he relied on family or friends for transportation. Appellant told Officer Snowden about his lack of reliable transportation. Appellant had been on probation before and understood the importance of following the rules and the serious consequences of willful, substantial non-compliance. Appellant testified that on the months when he had reported late, he lacked transportation and “had permission” to report late. When he worked for his landlord, Ron King, Appellant lived in Milton and had to pay for rides to get to Pensacola. Appellant testified that Officer Snowden and a previous probation supervisor were aware of his difficulties reporting between the first and fifth of each month. Appellant acknowledged that Officer Snowden had told him to call her beforehand if he could not report during the required period, but he asserted that the conversation occurred “at the very end.” Appellant testified that he had called his supervisor every month when he would report late or else had left a message with someone else at the probation officer. Appellant was not sure whether he had informed Officer Snowden about leaving messages for her. He “figured” that she had gotten the messages.
 

 Citing
 
 Hutchinson v. State,
 
 428 So.2d 739 (Fla. 2d DCA 1983), and
 
 Morales v. State,
 
 518 So.2d 964 (Fla. 3d DCA 1988), Appellant contends that the requirement for him to report to his probation office sometime between the first and fifth day of each month is a new, special condition that his probation supervisor, and not the sentencing court or Condition (8), imposed. The State counters that revocation is proper because Appellant failed to “com
 
 *681
 
 ply with all instructions” given to him by the probation officer. Probation may be revoked for violation only of a condition that was imposed by the trial court, not the probation supervisor; that is, “a probation officer cannot prescribe new conditions of probation.”
 
 Hutchinson,
 
 428 So.2d at 740;
 
 Page v. State,
 
 363 So.2d 621 (Fla. 1st DCA 1978).
 

 A comparison of the key facts and the language of the particular conditions demonstrates that Appellant’s case law is materially distinguishable. In
 
 Morales,
 
 the Third District Court concluded that the trial court’s general admonition to “comply with all instructions” did not encompass a specific new requirement imposed solely by his probation supervisor for Morales to set an appointment at a mental-health center for alcohol and drug counseling. 518 So.2d at 964. Similarly, in
 
 Hutchinson,
 
 the Second District Court determined that the generalized requirement to comply with “all instructions” given by the probation supervisor did not cover the officer’s specific new instruction to Hutchinson to make immediate contact with an alcohol community treatment service for counseling and therapy if deemed necessary by the agency. 428 So.2d at 740.
 

 The instant facts are different. By its express language, Condition (8) required Appellant to comply with all instructions
 
 and
 
 to allow visits by his probation officer at home, at the place of employment, “or elsewhere.” The court accepted Officer Snowden’s testimony that she had instructed Appellant that he was expected to meet with her monthly at the probation office on one of the first five days of each month. This visitation/reporting requirement, which is an essential aspect of the supervisory duties of probation, does not constitute a new, special condition of probation. Rather, it is a reasonable, necessary procedure for implementing the official “visitation” or meeting requirement that clearly is set forth in the written condition. Hol
 
 terhaus v. State,
 
 417 So.2d 291, 292 (Fla. 2d DCA 1982) (stating that specific court approval is not necessary for “normal supervisory directions” given by the probation officer);
 
 Watkins v. State,
 
 368 So.2d 363, 365-66 (Fla. 2d DCA 1979) (concluding that a court-approved probation condition, which is substantially like Condition (8), clearly and unambiguously required Watkins ' to report pursuant to a schedule devised by the probation officer to facilitate supervisory duties, so that Watkins’ unauthorized failure to report constituted a valid basis for probation revocation). Because Appellant was adequately apprised of the requirements of Condition (8) and the grounds for the affidavit of violation as to this condition, and competent, substantial evidence supports this violation, Appellant has not met his burden to show any error, let alone fundamental error.
 

 Because it is unclear from the record whether the trial court would have revoked probation and imposed the same sentence based solely on Appellant’s violation of Condition (8), we are constrained to REVERSE the revocation order and REMAND for further proceedings.
 
 Richardson v. State,
 
 694 So.2d 147 (Fla. 1st DCA 1997);
 
 Mordica v. State,
 
 618 So.2d 301, 305 (Fla. 1st DCA 1993).
 

 HAWKES, C.J., and VAN NORTWICK, J., concur.